John D. McKay, Esq.
Florida Bar No. 174378
PARK AVENUE LAW LLC
941 W. Morse Blvd. Suite 100 #265
Winter Park, FL 32789
johndmckayatty@gmail.com
(434) 531-9569 Telephone
(407) 264-6551 Fax
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Ocala Division

| | | |
|---|---|---|
| CARLO TRIMBOLI, | ) | Case No. |
| Plaintiff, | ) | |
| | ) | |
| | ) | COMPLAINT |
| vs. | ) | AND DEMAND FOR A JURY TRIAL |
| | ) | |
| | ) | |
| DEUTSCHE LUFTHANSA | ) | |
| AKTIENGESELLSCHAFT, | ) | |
| Defendant. | ) | |
| _____ | ) | |

For his Complaint against Defendant, DEUTSCHE LUFTHANSA AKTIENGESELLSCHAFT ("Lufthansa"), Plaintiff, CARLO TRIMBOLI, alleges the following:

<u>Jurisdiction</u>

This Court has jurisdiction over this civil matter pursuant to 28 U.S.C. §1331 because this is an action arising under an international treaty to which the United States is a party, specifically the Convention for the Unification of Certain Rules for International Carriage by Air Done at Montreal on 28 May 1999, ICAO

1

Doc. No. 9740 (entered into force November 4, 2003), reprinted in S. Treaty Doc.106-45, 1999 WL 33292734 (the "Montreal Convention").

## Venue

Venue is proper in this District pursuant to 28 U.S.C. §1391, subsections (b)(3), (c)(2) and (c)(3) because Lufthansa is deemed by that statute to reside in any judicial district in which it is subject to the Court's personal jurisdiction with respect to this civil action, and/or because Lufthansa is not resident in the United States and therefore may be sued in any district. Lufthansa is a corporate resident of Cologne, Germany. Upon information and belief, Lufthansa leases commercial space at Orlando International Airport (MCO) within this district from the Greater Orlando Aviation Authority, operates regularly scheduled passenger and cargo flights to and from MCO, employs persons who work for it at MCO, and regularly solicits business from the citizens of this district.

## The Parties

1. Plaintiff, CARLO TRIMBOLI, is an individual resident and citizen of Ocala, Marion County, Florida, and has been at all times relevant hereto. At the time of the events described herein, he was 70 years old and unable to walk without assistance.

2. Defendant, LUFTHANSA, is a German public limited company (Aktiengesellschaft) based in Cologne, Germany, where it maintains its principal business offices. Lufthansa's main operations hub is at Frankfurt Airport (FRA), in Frankfurt, Germany. Lufthansa operates one or more airlines that make regular scheduled flights between FRA and MCO.

Particulars of the Claim

3. Plaintiff purchased a ticket from Lufthansa for one-way travel by air from Milan Malpensa Airport (MXP) in Italy to a final destination at MCO, in the United States, with an intermediate stopover at FRA to change planes. His itinerary was therefore one of "international carriage" within the meaning of Article 1(2) of the Montreal Convention, because Italy, the place of departure, and the United States, the place of destination, are both States Parties to the Montreal Convention.

4. Lufthansa agreed to provide the air travel to Plaintiff on Lufthansa Flight 249 from MXP to FRA on September 20, 2023, connecting to Eurowings Discovery Flight 68 from FRA to MCO on the same date. Upon information and belief, Lufthansa owns both of the carriers and the carriage was regarded by the parties as a single operation. In fact, Lufthansa issued boarding passes to Plaintiff for both flights bearing its "Lufthansa" airline trademark.

5. Plaintiff's booking agent informed Lufthansa at the time of booking that Plaintiff needed wheelchair assistance, and Lufthansa confirmed receipt of that request. At MXP, Lufthansa and/or its agent provided wheelchair assistance to Plaintiff within the terminal and delivered Plaintiff to his seat in the first row of the aircraft's cabin using a wheelchair.

6. When Flight 249 landed at FRA, the aircraft did not park at a terminal gate with an attached jet bridge, but instead taxied to a parking spot on the tarmac that was separate from the terminal structure, from which its deplaning passengers were to be shuttled to the terminal on a bus after

disembarking from the aircraft by stairs onto the tarmac. Lufthansa's flight attendant aboard the flight told Plaintiff that he was required to disembark from the aircraft using the aircraft's air stairs to descend from the aircraft cabin onto the tarmac. Plaintiff reminded the flight attendant that he was unable to walk unassisted and needed a wheelchair, but the flight attendant refused to provide a wheelchair and told Plaintiff that walking down the air stairs was "the only way you're getting off the plane." The flight attendant not only insisted that Plaintiff use the air stairs, but also provided him no assistance in doing so. In fact, the flight attendant exhorted him to hurry down the stairs stating that his reluctance to proceed down the stairs unassisted was "holding up" the other passengers.

7. As a direct result of being rushed down the air stairs without assistance by the flight attendant, Plaintiff stumbled and nearly fell down the steps, causing a severe injury to one of his feet. The sudden abrupt movement on the air stairs tore open a previously sutured area on the side of his foot, causing him excruciating pain and exposing the previously sutured flesh to the risk of infection. Plaintiff subsequently developed a blood infection attributed to the newly opened wound that required him to be hospitalized for several days.

8. Once Plaintiff had descended from the aircraft to the tarmac, Lufthansa's employees and/or agents directed him to board the waiting bus, which then took Plaintiff and the flight's other passengers to the terminal building at its ground level. The bus driver directed Plaintiff to the bottom of a long staircase that he needed to ascend to reach the level of the departure gates and to obtain wheelchair assistance to deliver him to his connecting flight.

Because Plaintiff was obviously in severe pain and unable to ascend the staircase unassisted, other passengers from the flight who are American soldiers volunteered to carry his hand luggage and cane up the stairs and also assisted him up the staircase. Even with the generous assistance of the soldiers, the ascent up the staircase was painful and aggravated the injury to Plaintiff's foot that had been caused by the accident on the aircraft's air stairs. Once Plaintiff reached the departures level of the terminal, a Lufthansa employee arranged for a wheelchair to transport him to his connecting flight. This was after another Lufthansa employee initially refused to provide a wheelchair, stating that Plaintiff was not entitled to wheelchair service from Lufthansa because he was connecting to a flight operated by Eurowings, a Lufthansa-owned airline.

9. The aforesaid accident on the air stairs and resulting injury, and the injury's further aggravation during the climb up the terminal stairs, would not have occurred if Lufthansa's flight attendant had allowed Plaintiff to disembark using a wheelchair that Lufthansa had previously agreed to provide to him. The flight attendant's instructions to Plaintiff requiring him to descend via the air stairs were improper and erroneous, and inevitably caused the accident and injury. There was no reason why Lufthansa could not have taken Plaintiff off the aircraft in a wheelchair; in fact, after Plaintiff boarded the bus on the tarmac he saw a disabled passenger lift truck, a motorized lifting device that is specially designed for loading and unloading aircraft passengers in wheelchairs, being driven toward the aircraft he had just disembarked from. The pilots of the flight

had apparently requested the handicap assistance vehicle for Plaintiff without informing the flight attendant.

10. The accident and resulting injuries occurred through no negligence, wrongful act or omission by Plaintiff, especially because he was required by regulations to comply with the flight attendant's erroneous instruction to use the air stairs to disembark from the aircraft.

11. Pursuant to Article 17(1) of the Montreal Convention, Lufthansa "is liable for damage sustained in case of . . . bodily injury of a passenger upon condition only that the accident which caused the . . . injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." As described above, Plaintiff's injury occurred while in the course of disembarking from Lufthansa's aircraft.

12. As a result of the aforesaid injuries, Plaintiff suffered great pain and discomfort, disfigurement, embarrassment and mental anguish.

13. Plaintiff is entitled to fair compensation for his physical injuries, the associated mental distress and anxiety, his pain and suffering and embarrassment, and all discomfort, inconvenience and other *sequelae* of his injuries, under the terms of the Montreal Convention.

WHEREFORE, Plaintiff CARLO TRIMBOLI demands judgment against Defendant, DEUTSCHE LUFTHANSA AKTIENGESELLSCHAFT, in an amount to be determined by the jury but not less than FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), as permitted by the language of the Montreal Convention, as amended, plus pre-judgment interest from September 20, 2023

and post-judgment interest and his costs of this action, together with such other and further relief as the Court and/or jury shall deem just.

<u>Jury Demand</u>

PLAINTIFF DEMANDS A JURY TRIAL.

DATED this 12th day of February, 2024.

_____*s/ John D. McKay*_____  
John D. McKay  
Counsel for Plaintiff
